WILLIAM R. SEWARD AND MARY A. SEWARD, his wife *vs.* MAYOR AND COUNCIL OF WILMINGTON.

New Castle County, February Term 1896.

**Municipal Corporations. Streets. Highways. Negligence.**—A municipal corporation is bound to exercise due care and diligence that no dangerous holes, obstructions, or anything which may cause injury to persons shall exist in the streets, pavements, lanes, footways, where the public have a right to travel night or day.

**Same.**—It is not bound for any injury resulting from the act of God, as washouts by sudden storms, provided they have not had a reasonable time to repair; but if after a reasonable time and notice they neglect, they are liable, and should a defect exist constituting danger in any street, footway, etc., and the same not be repaired within a reasonable time, the law presumes notice and the corporation is liable.

**Same.**—If the city allow and throw open to use by the public a footway, it is not necessary that it should be paved, but the city is bound to keep such a passway safe in the outskirts of the city and fronting on lots not built upon, as in the most crowded thoroughfare; in the latter greater care is necessary but commensurate care and diligence must be exercised in all parts of the city.

**Same.**—The city is bound to keep in good and safe order and repair the streets, etc., so that they may be reasonably safe for all persons to pass and repass day or night.

**Same.**—If a person is injured by falling into a hole or excavation extending across the footway and dangerous in its character and permitted to remain so for a month and the injuries are the necessary consequences of stepping into the hole, the city is liable.

**Same.**—If in such case the jury find that there was contributory negligence, there can be no recovery, no matter what was the character of the place.

**Constitutional Law. Municipal Corporation.**—The Act of April 24, 1889, imposing upon the abutting land owner the sole responsibility for damage resulting to persons or property by defects in or obstructions on the footways, unless caused by the city or its agents, is unconstitutional and void.

**Same.**—Where a municipal corporation accepts its charter and acts under it, the duties imposed and liabilities incurred cannot be divested, unless the right to alter or amend is reserved in the charter or secured by the State Constitution.

**Same.**—The power to revoke acts of incorporation in the Constitution of the State does not include the power to alter or amend a municipal charter so as to relieve the corporation from the duties and liabilities springing from its accepting the same and acting thereunder.

**Jury. Demand of View.**—In an action on the case for injuries caused by a defective sidewalk, an order to allow the jury to view the *locus in quo* will not be made where the evidence is conflicting as to whether or not there has been any change in its condition.

This was an action on the case to recover damages for injuries received by Mary A. Seward, one of the plaintiffs, which were oc-

casioned by her stepping into a hole or excavation in the sidewalk on Fifth Street, West of Harrison Street in the City of Wilmington.

At the trial the plaintiffs produced evidence to prove that Mrs. Seward, in the exercise of due care, was walking with her husband on the evening of May 15, 1893, and crossed Harrison Street to Fifth Street West of Harrison, on the unpaved side of the street then used as a sidewalk. The night was dark and rainy, and the light on the opposite side of the street was not sufficient to disclose any obstruction in the sidewalk. The plaintiffs were strangers and had never before passed over the sidewalk. Mrs. Seward stepped into a hole or excavation containing a stone or rock fast in the bottom, and projecting with jagged edge near the top. The excavation extended across the sidewalk from building line to curb on street; and where she stepped in, the hole was some ten or twelve inches deep. She was thrown violently to the ground, and bruised by contact with the stone, and she sustained by reason of such fall, not only immediate, but permanent injuries of such a nature and character, as to seriously affect her for life. The sidewalk where the hole or excavation existed, was fronting a lot on which were no buildings, but located within the city limits. It was proved that persons, believed to be employed by the Street and Sewer Department of the city, had been seen digging out the excavation, and also that it drained the water from the vacant lot.

The testimony on behalf of the defendant was to the effect that the excavation was very slight and apparently cut out by water running over the sidewalk, and was not of a dangerous character, and also that the stone in the excavation was a small one. It was also shown that the lamp on the opposite corner was sufficient to light the way so that a person exercising ordinary care could see the excavation. The city officials had given no direction or authority to make the excavation. The evidence was conflicting as to whether it was in substantially the same condition at the time of the trial as at the time of the accident.

At the conclusion of the testimony on both sides, and after

both had rested, *H. C. Knowles*, for the defendant, made an application to the Court that the jury should be permitted to view the premises where the accident occurred.

CULLEN, J.    An application for the jury to view the premises is often in order, and is proper in many cases, but such an application has reference to an act at a particular time, and when the premises were in a certain condition.

I think the Courts have gone rather too far in this matter, yet in a case of trespass or even in a trial of an indictment for murder, if the fact is established that there has been no change in the *locus in quo*, it is proper for the jury to view the same in order that they may ascertain and determine the true state of facts in the case before them.    But the very moment a change is made, it is no longer the *locus in quo*.

In this case the *locus in quo* was in a certain condition on May 15, 1893.    Now if there were no doubt in the mind of the Court, and if there had been no evidence, or if it had been shown beyond question that the *locus in quo* remained the same, then to enlighten the minds of the jury and to give them an opportunity to see the surroundings, it would be proper and legitimate and would subserve the ends of justice that they should view it; here the testimony is conflicting.    There was a stone which was an important feature which some witnesses says is no longer there.    The *locus in quo* is not proved to be in the same condition and the case must be determined upon the condition of things on the 15th day of May, 1893.

In a former case that was adjudicated here in relation to a hedge, I think the Court went very far in this matter.    If there were some things that were changed which did not in any material way change the *locus in quo*, it might be proper.    But according to the case as it is proved here—and that is a matter for the jury entirely—we cannot say whether there have been changes or not. But if there have been changes, it would be misleading to the jury.

We, therefore, decline to order a view in this case, as it is entirely unnecessary to the ends of justice.

In addition to the defences arising out of the facts for the decision of the jury, it was insisted on behalf of the defendant that by valid statutory enactment, the city was relieved from any and all liability for defects in or obstructions on the sidewalks. The Act relied on is fully set out in the charge of the Court. It provides in substance that the owner of the abutting premises shall be solely liable in such cases unless the hole or obstruction was caused by the city or any of its authorized agents.

On the part of the plaintiffs, it was contended that the statute in question was unconstitutional and void, and this presented the only seriously controverted question of law in the case.

*R. G. Harman*, City Solicitor, and *H. G. Knowles*, for the defendant, prayed the Court to instruct the jury, that "if the jury believe that the defective condition of the sidewalk (if it was defective) was not caused by the city or any of its authorized agents, then the verdict must be for the defendant, and the burden is upon the plaintiff to prove by a preponderance of evidence that the city or some of its authorized agents made the sidewalk so defective."

They contended :

1. There is no common law liability for injuries resulting from unsafe and defective highways and streets ; *Hill vs. Boston*, 122 Mass. 344.

2. The liability where it exists, is a statutory one though it need not be expressed but may be implied, and it is implied where the municipality is, (a) given full control over its streets ; (b) where the duty to keep them in repair is enjoined upon them ; (c) where it receives a consideration for the doing of the work, (d) and where the duty is purely local and corporate and not public or governmental. *id.*; 2 Dillon, Mun. Corp. § 980.

3. As the Legislature can impose the duty and the liability, so it can limit or even completely remove the same unless prevented from so doing by the Constitution of the United States, or the Constitution of our own State; *id.* §§ 44-54 and note to § 55 ;

Cooley, Const. Lim. 230; *State vs. Allmond*, 2 Houst. 612, 634; *Coyle vs. McIntyre*, 7 Houst. 44, 90-92, 98, 100.

4. And as such a law in no way interferes with vested rights; 1 Dill. Mun. Corp. §§ 54-5 and notes; Cooley, Const. Lim. 231; *Coyle vs. McIntyre, supra*; or impairs the obligation of contracts; *id.*; 1 Dillon § 54; 2 *id.* § 967; 21 Mich. 84; Pom. Const. L. 381; Cooley 231; the will of the Legislature is supreme and the law therefore, constitutional; Shearm. & Redf. Negl. § 124; *Gray vs. Brooklyn*, 50 Barb. 365; *Fitzpatrick vs. Slocum*, 89 N. Y. 358; *Hardy vs. Arooklyn*, 90 *id.* 435; *Bieling vs. Brooklyn*, 120 *id.* 98; *O'Hara vs. Portland*, 3 Ore. 525; *Nichols vs. Minneapolis*, 30 Minn. 545; *Parsons vs. San Francisco*, 23 Cal. 563.

5. But even if it be a contract (as in the case of a private corporation), if the State has reserved the right to repeal, alter or amend the charter of the corporation—the exercise of that right does not " impair the obligation of the contract." Cooley, Const. Lim. 337-338; 3 A. & E. Encyc. L. 741, 3; *Bailey vs. P. W. & B. R. R. Co.*, 4 Harring. 401; *Gray vs. Brooklyn*, 2 Abbott, App. Dec. 272. (a) This power has been reserved in our Constitution. Const. of Del. Art II § 17. (b) And its reservation in the Constitution is equivalent to its insertion in the charter. *Delaware R. R. Co. vs. Tharp*, 5 Harring. 456.

6. If there be any doubt as to the constitutionality of the law, that doubt will be resolved in favor of its constitutionality. Cooley, Const. Lim. 218-219; Endlich Interp. Stat. 738, 248, note.

*L. C. Bird* (*A. E. Sanborn* associated with him on the brief) for the plaintiff.

I. What were the respective duties and responsibilities of the defendant and the abutting owner with respect to the sidewalk, under the well settled law of this State, as applied to the facts of this case.

1. The defendant is the owner in fee simple of the land where the accident happened.

2. The defendant has the sole and exclusive jurisdiction over, and control of the streets and sidewalks of the City of Wilmington.

3. The adjacent land owner has no property right in the side-walk, or control of it. The defendant has the power to pave or repair sidewalks and assess the cost of same against the adjacent land-owner, without notice to him, while the adjacent land-owner can only pave or repair the sidewalk in front of his premises, under supervision and control of the defendant. Charter of the City of Wilmington, §§ 119, 120.

4. The defendant's charter does not make it the duty of the land-owner to keep the sidewalk in front of his premises free from dangerous holes, obstructions or defects therein; but does give the city the right to repair the same at any time, and charge the expense thereof up to the adjacent land-owner.

5. It is the law of Delaware,—"That the acceptance by the City of Wilmington of its Charter, which gives it the sole and exclusive jurisdiction and control of the streets and sidewalks of the city, and confers upon it the sovereign power of taxation, by which the means to carry out its power may be secured, carries with it a primary duty of keeping said streets and sidewalks free from dangerous defects therein and in a reasonably safe condition for the travelling public. And the city can in no way escape from liability for its negligence in discharging this primary duty." *Anderson vs. Wilmington*, 8 Houst. 525; *Robinson vs. Wilmington, id.* 409; *Benson vs. Wilmington*, 32 Atl. Rep. 1047.

6. The defect may have been caused in the first instance by negligence of some third person, who would be liable for his own negligence, yet the city is still primarily liable if actual constructive notice to it can be shown. *Robinson vs. Wilmington*, 8 Houst. 409.

7. The municipality is held by the law to the same degree of care with respect to its real estate, as an individual; and in all cases is responsible for the result of its own negligence, to the same extent as a natural person or other corporation.

II. Under the Roman Law, the corporation was liable for torts, the obligation " *alterum non laedare* " resting upon it; Jones,

Negl. § 14.    Municipal corporations were always liable for torts in England ; Jones, Negl. *id.* § 15–18 ; *Mayor of Lynn vs. Turner*, Cow. 86 ; *Russell vs Men of Devon*, 2 T. R. 667 ; and American law has invariably held them liable for negligence in the performance of corporate duties ; 2 Dillon, Mun. Corp. § 966.

III.  Both reason and authority justify the conclusion that the law in question is unconstitutional and void.

1.  Because it is an attempt on the part of the Legislature to impose a liability on an individual irrespective of negligence.

The Statute makes the adjacent property-owner solely and absolutely liable in damages for all accidents, by reason of holes, excavations or obstructions in the sidewalks in front of his property, irrespective of negligence.    It makes him the insurer of another's safety.    It absolutely relieves the guilty party from responsibility for its negligence and puts the whole responsibility upon the innocent.    In other words, it rewards the guilty and punishes the innocent.    This is plainly unjust and tyrannical and directly repugnant to the nature and spirit of our form of government.    Also to Section 7, Article 1, of the Constitution of Delaware which provided, No man "shall be deprived of life, liberty or property, unless by the judgment of his peers, or the law of the land."    And also to the fourteenth Amendment to the Constitution of the United States, which declares, " Nor shall any State deprive any person of life, liberty or property without due process of law."

In determining this matter let us consider,

First, the very interesting question as to whether this Court has the power to declare an Act of the Legislature invalid, which does not contravene some provision of the Constitution, upon the ground that it violates the plainest principles of natural justice, and is against the nature and spirit of our republican form of government—the purpose for which the Constitution was framed— which is to protect life, liberty, reputation and property.

Nowhere in the books, has this power of the Courts been more clearly asserted and vigorously maintained than by the Court of Appeals of this State : *Rice vs. Foster*, 4 Harring. 485.

Argument for Plaintiff.

What is an unconstitutional law ? An " unconstitutional law " is one which violates the provisions or principles of the supreme law of the land, or of that constitution by which the particular law-making body is governed. 3 A. & E. Encyc. L. 671.

Both upon principle and authority a statute contrary to the *spirit of the constitution* and the necessary inferences from it, or to the fundamentals of justice and good government or to those cardinal principles of the social compact which underlie all legislation and enter into the framework of representative government, may be pronounced void by the Courts. *Regent vs. Williams,* 9 Gill & J. 365, 412-413; *Welsh vs. Wadsworth,* 30 Conn. 155; *Calder vs. Bull,* 3 Dall. 386; *Wilkinson vs. Leland,* 2 Pet. 657.

The most eminent Judges in both the Federal and State Courts have decided that the Courts have this power. Strong, J., in *People vs. Toynbee,* 20 Barb. 218; Bronson, J., in *Taylor vs. Porter,* 4 Hill 145; Hosmer, J., in *Goshen vs. Storlington,* 4 Conn. 259; Walworth, Ch., in *Varick vs. Smith,* 5 Paige 137; Spalding, J., in *Griffith vs. Commissioners,* 20 Ohio 609; Parker, C. J. in *Ross Case,* 2 Pick. 169.

In England, the authority of Parliament was regarded as almost supreme, yet Lord Coke in *Bonham's Case,* 8 Co. 118 a., said, " It appears in our books that in many cases, the common law will control acts of Parliament and adjudge them to be utterly void, for when an Act of Parliament is against common right and reason, or impossible to be performed, the common law will control it and adjudge such act to be void."

Some authorities, which deny this power of the Courts in the abstract place the right of the Courts to declare invalid a law which violates natural justice upon ground that such a law violates *implied constitutional restrictions.*

*In all jurisdictions* it is conceded that the Courts may bring every legislative enactment which violates the great principles of natural justice between man and man, or is contrary to the nature and spirit of our republican form of government, within the express provision of the Fourteenth Amendment of the United States,

which declares: " Nor shall any State deprive any person of life, liberty or property, without due process of law," and clauses in the State Constitution like that contained in Section 7, Article 1 of the Constitution of Delaware, which provides, " that no man shall be deprived of life, liberty or property, unless by the judgment of his peers of the law of the land."

The provisions of the State and Federal Constitutions have sometimes been denominated "glittering generalities," but as has been most aptly expressed by Judge Redfield in his annotation to *People vs. Turner*, 55 Ill. 280; 10 Am. Law Reg. N. S. 372. " There is living power enough in those abstractions of the State Constitutions, which have heretofore been regarded as mere ' glittering generalties ' to enable Courts to enforce them against the enactments of the Legislature, and thus declare that all men are not only created free and equal, but remain so, and may enjoy life and pursue happiness in their own way, provided they do not interfere with the freedom of other men in the pursuit of the same objects."

It is a matter of little practical importance upon what ground the right of the Courts rests, so long as it has the right and courageously exercises it. Tiedeman, Lim. of Police Power, § 3 ; *East Kingston vs. Towle*, 48 N. H. 61.

What is the meaning of the expressions " Due process of Law ; and Law of the Land ?"

The authorities agree that they are interchangeable terms and mean practically the same thing. Cooley, Const. Lim. 429, 433. The briefest and most comprehensive definitions of the phrases we have been able to find are contained in the opinion of the Judges in the following cases : *Bank of Columbia vs. O'Kelly*, 4 Wheat. 244; *Denver etc. R. R. vs. Outcalt*, 31 Pac. Rep. 177, 179 ; *Wilkinson vs. Leland*, 2 Pet. 241 ; Ordronaux, Const. Leg. 254-255; *Jones vs. Wooten*, 1 Harring. 81-82.

Negligence is the basis of liability for torts, and no man can be legally held responsible for an accident which did not result from his negligence.

The Statute is clearly unconstitutional because it imposes upon

the adjacent landowner an absolute liability irrespective of negligence. There are many illustrations of this principle as applied to statutes affected by this vice; as stock killing cases; *Denver etc. R. R. vs. Outcalt*, 31 Pac. Rep. 177-179; *Jensin vs. Union Pac. R. R.*, 21 Pac. Rep. (Utah) 994, 995; *Cottrell vs. Union Pac. R. R.*, 21 Pac. Rep. (Ida.) 416; *Bullenberg vs. R. R. Co.*, 20 Pac. Rep. (Mont.) 314; *Oregon etc. R. R. vs. Swatley*, 23 Pac. Rep. (Wash.) 100; absolute liability for dog killing sheep; *East Kingston vs. Towle*, 48 N. H. 57; railroad company made liable for funeral expenses, irrespective of negligence; *Railroad Compay vs. Lockey*, 78 Ill. 55; company made liable for negligence of coal mine foreman, appointed by the act; *Durkin vs. Kingston Coal Co.*, 33 At. Rep. (Pa.) 237-238; unjust legislation; *San Antonio R. R. vs. Wilson*, 19 S. W. Rep. 910; unequal legislation; *Anderton vs. City of Milwaukee*, 52 N. W. Rep. 95; *Millet vs. People*, 7 N. E. Rep. 631; Sedgwick, Const. L. 45.

The adjacent landowner cannot be held liable for defects in the sidewalk over which he has no control.

Even in those cases where the City Charter imposes on the owners, as well as the city, the duty of keeping sidewalks in repair, the Courts hold that the land-owner is not liable to persons injured by defects in the sidewalk. The individual is only liable for the cost of repairing the sidewalk. *City of Rochester vs. Campbell*, 123 N. Y. 405; *Toutloff vs. Green Bay*, 65 N. W. Rep. 168; *Law vs. Kingsley*, 82 Hun 76; *Chicago vs. O'Brien*, Ill. 532; *Fulton vs. Tucker*, 3 Hun 529; Dillon, Mun. Corp., § 1012; *Kirby vs. Association*, 14 Gray 252; *Hartford vs. Talcott*, 48 Conn. 525; *Taylor vs. R. R. Co.*, 45 Mich. 74; *Jansen vs. Atchison*, 16 Kan. 358; *Flinn vs. Canton Co.*, 40 Md. 312.

The statute is unconstitutional because it attempts to relieve the city from all responsibility for its negligence in the discharge of its primary duty of keeping its streets and sidewalks in a reasonably safe condition for public use.

It is against the fundamental law and sound public policy that this should be done. The Legislature can no more absolutely re-

lieve a municipal corporation from liability for its negligence than it can an individual. *Durkee vs. City Janesville*, 28 Wis. 470; *Coyle vs. McIntire*, 7 Houst. 92.

The Legislature, under the Constitution has no right to take away all right of action. It may limit and control the remedy, but not to such an extent as to practically relieve a tortfeasor from all responsibility for his negligence. Constitution of Delaware, Sec. 9, Art. 1; *Cook vs. Gray*, 2 Houst. 455; Cooley, Const. Lim. 445, 352-353.

This the statute does and it clearly constitutes a taking of property within the meaning of the constitutional restriction. The plaintiff's right of action against the city cannot be taken away from them by any act of the legislature. A right of action when it comes into existence under common law principles and is not given by the statute as a mere penalty, or without equitable bases, is as much *property* as any tangible possessions, and is as much within the rules of constitutional protection. *Griffin vs. Wilcox*, 21 Ind. 370, 373; *Dunlap vs. Toledo &c.*, 50 Mich. 474; *Johnson. vs. Jones*, 44 Ill. 142; *Power vs. Harlow*, 57 Mich. 111; *Hubbard vs. Brainard*, 35 Conn. 563; Cooley, Const. Lim. 445, note.

Again, it is an attempt to shift upon the property owner, a private person, a liability for the failure of the public authorities to perform a governmental duty, practically turning every man who owns a lot in the city into a street supervisor. The citizen owes no duty to the public. His liability is to the city for the costs of the repairs.

There is no rule or principle known to our system under which private property can be taken from one person and transferred to another for the benefit of such other person, whether by general law or by special enactment. Cooley, Const. Lim. 437. It is not therefore, competent to provide that the claimant or purchaser of property, for the seizure or sale of which an indemnifying bond has been taken and returned by the officer, shall be bound by an action against the officer and confined to his action on the bond as the only remedy. *Foule vs. Mann*, 53 Iowa 42; *Ehlers*

*vs. Stockle,* 37 Mich. 261 ; an act suspending the statute of limitations in favor of an individual is held invalid.   *Holden vs. James,* 11 Mass. 396.   Also an act empowering a judge of probate to take an administration bond in a mode differing from that prescribed by the general laws of the State.   *Picquet, Appellant,* 5 Pick. 65.

But this whole question as to the power of the Legislature to *entirely exempt municipal corporations from liability for defective side-walks* has been *exhaustively* considered in the following cases, which decide that such acts exempting municipalities are unconstitutional and void.   *Noonan vs. Stillwater,* 33 Minn. 198, 209 ; *Hincks vs. Milwaukee,* 46 Wis. 559 ; *Durkee vs. Janesville,* 28 Wis. 470·; Jones, Negligence §§ 87-89 ; *Hardy vs. Booklyn,* 90 N. Y. 435 ; *Fitzpatrick vs. Slocum, et al.,* 89 N. Y. 365 ; *County of St. Matio vs. R. R. Co.,* 8 A. & E. 1, 18 ; *Stewart vs. Palmer,* 74 N. Y. 183, 190 ; *Ullman vs. Mayor &c. of Balto.,* 20 Atl. Rep. 141.

III.   As the owner of land, a municipal corporation is subject to the same liabilities for its negligent care thereof as an individual. It is amenable to the maxim *"sic utere tuo ut alienum non laedas."*

The defendant therefore, as the owner of the sidewalk in fee simple, is responsible for injuries to persons caused by its neglect. And the Legislature cannot relieve it from a liability to which all ·other corporations and persons are subject, as the owners of land or structures.   2 Dillon, Mun. Corp. §§ 985–986 ; 1 Shearm & Redf· Negl. § 285 ; *Bailey vs. New York,* (Per Nelson, C. J.) ·3 Hill 531 ; 2 Den. 433 ; 2 Thompson, Negl. 658, 740 ; Jones, Negl. ·§§ 38–39.

It is not a question as to whether the corporation derives pe- ·cuniary profit from the land.   It must use care to prevent injury to those lawfully upon its property.   Jones, Negl. Mun. Corp. § 149, 150–158 ; *Lynn Regis vs. Henley,* 2 Thomp. Neg. 627 ; Poll. Torts, 51–52 ; Jones, Negl. 291, note 1 ; *Savannah vs. Collins,* 38 ·Ga. 334 ; *Hannan vs. St. Louis County,* 62 Mo. 313.

A distinction must be drawn between the public or governmental character of municipal corporations and their proprietary or

private character.    Dillon, Mun. Corp. § 66; Cooley, Torts 619–620.

CULLEN, J., (charging the jury.)

The law in this State relative to the liability of a municipal corporation, with reference to negligence, by which an injury may occur, is so well settled that it is unnecessary to refer to the adjudicated cases.    It is the duty of the Street and Sewer Department acting under the corporation, having "entire jurisdiction and control within the limits of said city of the streets, squares, lanes, walks, or alleys thereof, said jurisdiction and control to extend from building line to building line," to keep the same in good repair and condition.    They are bound to exercise due care and diligence, that no dangerous holes, obstructions, or anything which may cause injury to persons shall exist in the streets, pavements, lanes, and footways, where the public have a right to travel night or day. They are not bound for any injury resulting from the act of God, as washouts by sudden storms, provided they have not had a reasonable time to repair, but if after a reasonable time and notice, they neglect, they are liable, and should a defect exist constituting danger in any street, footway, etc., and the same be not repaired in a reasonable time, the law presumes notice, and the corporation is liable. If the city allow and throw open to use a footway used by the public, it is not necessary that it should be paved, but the city is as much bound to keep such a passageway safe in the outskirts of the city, and fronting on lots not built upon, as in the crowded thoroughfares. It is true that greater care would be required in most frequented streets, but a commensurate degree of care and diligence must be used in all parts of the city in order to insure the safety of the travelling public.    The city is bound to keep in good safe order and repair the streets etc., so that they may be reasonably safe for all persons to pass and repass day or night.    The city under its charter having assumed the duties and liabilities therein imposed, our Courts by a long line of uniform decisions, have clearly defined what those duties and liabilities are, which are as we have stated.

You must be satisfied, that the injury occurred within the limits of this City, on a footway on which persons regularly passed at the time of injury, and was used as a public footway ; that the plaintiff Mary A. Seward was using due care and diligence in passing over it ; that the hole or excavation which it is stated extended across the footway, was dangerous in its character and so remained for a month ; that the injuries complained of were the necessary consequences resulting from stepping in such hole ; and that the said Mary A. Seward was by the fall thus occasioned hurt and injured. If these facts be satisfactorily proved from the evidence, your verdict should be for the plaintiffs, inasmuch as it establishes a clear case of negligence on the part of the City. But should you be satisfied from the evidence that Mary A. Seward was not using due care and diligence, and recklessly and carelessly fell into this hole or excavation, she was guilty of contributory negligence and has no right to recover, it matters not as to the character or nature of the place. Again, if there was no dangerous place, or if the party complaining suffered no injury, your verdict should be for the defendant.

We must say to you in this connection, as to diligence and care in daytime and night, the person is ever bound to use all necessary care and precaution to avoid danger, but in passing over your streets and sidewalks at night he has a right to presume there are no hidden or secret dangers, and that streets and passages or footways without warning may be traversed safely, and should one in the night step into a hole carelessly existing from want of diligence on the part of the City, the City would be liable, though such a danger existing in the daytime one could see, and running into it would be contributory negligence. We have thus far spoken of the liabilities of the City corporation, with reference to the law heretofore as laid down by the decisions of our State Courts, which are uniform and agree with, in the main, the English and American decisions throughout this country, but we come now to one other defense made in this case, arising by reason of a statute recently passed by the Legislature of our State, 24th April 1889. This

statute did not exist, and has originated since the decisions have been made, defining the liabilities of the City by reason of certain injuries caused to persons by reason of City's negligence, as laid down by the Courts. The defendant contends that, admitting all liability as laid down by the Courts heretofore, in cases of negligence charged, it amounts to nothing, inasmuch as the recent act of the Legislature changes the liability of the municipal corporation of the City of Wilmington, and shifts from it all liability for damages occurring in cases mentioned in the Act, to the owners of the premises fronting the place where injury occurred. In other words, the contention is that the meaning of the Act is, that it has by its terms, meaning and effect, relieved the city from all damages to which it was admitted the city was theretofore liable, and placed the same upon the owner of the premises or property fronting upon any footway etc., where injury has occurred. The plaintiff says this law or amendment to charter, is unconstitutional, utterly in derogation of the powers conferred by the charter of the city, and subversive of the imposition and liabilities imposed by charter. In order to determine this matter we must examine this Act, though the clause upon which the defense relies appears to be inserted in another Act, which in its meaning, as to the clause relied on, has no connection whatever with the spirit and meaning of the Act under consideration. We will, however, consider the latter Act as being separate and apart, and the question then comes, does it relieve the city from duties and liabilities heretofore imposed on it for which, our decisions say, it is liable.

The Act is in these words: "The owner of any premises fronting upon any footways, shall be solely responsible for any damage, that may result to persons or property by reason of any hole, excavation, or obstruction in or upon said footways, or from any defective condition of such footways. *Provided*, however, that such hole, excavation or obstruction or other defective condition of the footways aforesaid is not caused by the city or any of its authorized agents."

What does this Act mean? No doubt the intention was to

relieve the city of liability which by the terms and provisions of its. charter was held by our Courts to rest upon the city ; that is to say, the intent of the Act was to relieve the city from certain lia-- bilities, which our Courts say it had assumed and was bound for in damages.  But can we so construe a statute, which is in direct op- position to the original meaning of that to which it is really a sup- plement.  We are to construe the charter of the City of Wilming- ton, not an Act of Assembly ; and in so doing whether it be the one or the other, the provisions of the Constitution if they conflict with. it or are involved must be taken into consideration to guide us to a proper consideration of this subject.  The City of Wilmington is. a corporation.  The charter when granted imposed duties and lia- bilities ; they accepted the same, and for years have been acting thereunder, vested with the powers of taxation, and the Courts. have defined their powers and liabilities.  Are they not fixed ?  The charter conveys rights, duties, obligations according to its special provisions, as ordered by the Constitution ; by the charter or Act of incorporation, the incorporation received its life, breath and being ; true it is the creature of the Legislature, the life giving power, but it must conform to the provisions of the Constitution,. else it would be void ; but when consistent it speaks for itself.  We say consistent with the constitution ; we are dealing with our own, not those of other States, to which I shall allude briefly hereafter. Our Constitution provides and reserves no right of power save to revoke.  Now a charter as in this case, or Act of incorporation was granted, vesting certain imposed duties and liabilities ; the city ac- cepts, and then, by a subsequent Act of the Legislature, seeks to. limit the powers and liabilities defined by the Courts.  Can this be done?  It is said that there are no vested rights and no impairing of contract, which is expressly prohibited by the Constitution ;. but we think the duties imposed and liabilities incurred, are co-ex- tensive, and equal to bind the city corporation.  We consider that. duties once imposed and liabilities incurred by accepting and acting under an act of incorporation, cannot be divested, save the right to alter, or amend be in the Constitution, and should an act be passed.

Charge.

not having such exception inserted, the incorporators having accepted without such reservations, have no right to claim the benefit thereof. This position is well settled by the main case called the " Brooklyn " case cited in argument in which the facts were very similar to those of this case. There the question arose as to the amendment of a charter, which it was contended could not be altered, parties having accepted and acted on it, but the Court on appeal said and admitted that *aliunde* the Constitution it could not be but inasmuch as the Constitution by its express terms allowed alteration and amendments, and as the same provisions were embodied in the charter, and so accepted, it could be amended. No decisions have been cited in any way controverting the general doctrine, that parties accepting an act of incorporation are bound and held to its provisions, unless there be a right to change or alter expressly set forth in its provisions, except cases where both parties expressly assent to such change. The cases cited for the defendant from Oregon and California have no relevancy to this case, the Oregon case by express terms being governed by statutes in that State, and the California case having reference to the city being joined with the county.

We therefore say to you, that this Act of Assembly is, as far as this case is concerned, unconstitutional and void and presents no defence to this action.

You will observe, that the Act, about which so much has been said, provides, that " The owner of any premises upon any footways shall be solely responsible for any damages," etc., provided that the hole, excavation or obstruction, etc., is not caused by the city. Now, the question which arises here is one of fact, and is to be considered entirely independent of what we have said relative to the unconstitutionality of the said statute. If, therefore, you are satisfied from the evidence, that the city, by its agents caused the excavation or hole, by digging out the same, the defendant is clearly liable, and your verdict should be for the plaintiff, without regard to the provisions of said Act, inasmuch as the said Act has

no reference to cases of damage arising where same is caused by the act of the defendant.

With reference to damages and the amount thereof in case your verdict should be for the plaintiff, that is a matter solely and entirely within your province; you should give such a reasonable and fair compensation as you, in your sound judgment and discretion, think is proper and adequate to compensate the plaintiff for loss and damages sustained by reason of injury. Should your verdict be for defendant, you will simply say, we find for the defendant.

*The Jury Disagreed.*